IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHNNA HAYS,

    Plaintiff,

v.                                                                                          Civ. No. 14-823 SCY

CAROLYN W. COLVIN,
*Commissioner of the*
*Social Security Administration*,

    Defendant.

## ORDER

       This matter is before the Court on Plaintiff's Motion to Reverse and Remand the Social Security Administration Commissioner's decision to deny Plaintiff disability insurance benefits. *Doc. 18*.  For the reasons discussed below, the Court will grant Plaintiff's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

**I.**        **BACKGROUND**

       **A.**   **Plaintiff's medical history**

            *i. Plaintiff's Medical History Before the ALJ*

       Plaintiff Johnna Hays is a fifty-four year old woman who alleges a history of psychological ailments, including post-traumatic stress disorder ("PTSD"), attention deficit hyperactivity disorder ("ADD") and bipolar disorder that have ultimately rendered her disabled. Administrative Record ("AR") 83, 273.

       Plaintiff's medical records begin in 2010 with her treatment at Sage Neuroscience Center, presumably by a therapist named Brian Crumm. AR 270, 322, 333. Between September 2010 and 2012, Plaintiff was treated for depression, anxiety, obsessive thoughts, and PTSD, for which

she received a variety of medications, including Zoloft and Klonopin. AR 304-322. She was assessed Global Assessment of Functioning (GAF) scores at each meeting, which varied from a high of 65 to a low of 50. *Id.*

On August 7, 2012, Dr. Tait Dalton, M.D. evaluated Plaintiff and diagnosed her with an unspecified mood disorder. AR 327-29. Plaintiff declined the offer of most psychiatric medications, and reported only taking Trazodone. AR 328-29. He again saw her on September 5, 2012, and increased her dosage of Trazodone. AR 361.

On September 17, 2012, Dr. Davis Brimberg, Ph.D., performed a mental disability evaluation on Plaintiff. AR 333-36. He found that Plaintiff was well-groomed and cooperative, displayed some difficulty with memory and behavior consistent with paranoia. AR 334. He ultimately diagnosed her with bipolar disorder, ADD, and PTSD, assessing her with a GAF score of 50-55. AR 335. He considered her prognosis to be "poor due to the nature of her long-standing symptoms and history of suicidal ideation . . . [and] not currently receiving counseling." AR 336. However, he ultimately concluded that Plaintiff displayed "a good ability to reason, understand, and remember information . . . [a] basic ability to concentrate . . . a good ability to interact socially and . . . a good ability to adapt to social and work situations." AR 336.

On November 11, 2012, Plaintiff returned to Dr. Dalton. AR 357. Plaintiff reported ongoing, compliant use of Trazodone and he also prescribed her Busiprone. AR 358. Dr. Dalton's diagnosis that Plaintiff had an unspecified mood disorder remained unchanged. *Id.* Plaintiff again saw Dr. Dalton on December 3, 2012. Dr. Dalton noted that Plaintiff was compliant with her medications and that she reported moderate improvement. AR 409.

On January 8, 2013, Dr. Dalton noted that Plaintiff reported she "hit the bottom." AR 405. Dr. Dalton prescribed Plaintiff gabapentin. AR 406.

On January 21, 2013 Jon E. Rabka, MA, LPCC evaluated Plaintiff. AR 400. At their initial meeting, he assessed her as having severe depression and anxiety, but being oriented and with intact memory. AR 401-02.  He diagnosed her with PTSD, unspecified mood disorder, and a GAF score of 45. At subsequent meetings on January 24 and February 6, 7, 21 and 28, 2013, he maintained these diagnoses of PTSD and unspecified mood disorder, and assigned a GAF score of 45 on the 24th, 6th, 7th and 21st, and a GAF score of 47 on the 28th. AR 375-87.

Dr. Dalton again saw Plaintiff on February 5, 2013, when he adopted the GAF score of 45 that Jon E. Rabka, MA, LPCC had assigned to her the past January. AR 389, 396, 406.  On April 4, 2013, Dr. Dalton saw Plaintiff and adopted a GAF score of 47 (AR 415-16) that Mr. Rabka apparently assessed the previous February.[1]  Records from Dr. Dalton's appointment on April 4, 2013 further indicate that Dr. Dalton determined Plaintiff to have severe problems related to, among other things, occupation, her primary support group, and her social environment. AR 416.  Plaintiff also reported to Dr. Dalton that she was looking for work and continuing with therapy. AR 415. Her diagnoses were PTSD and mood disorder, and she was prescribed Trazodone, Gabapentin, Fluoxetine, and Buspirone. AR 416.  When she saw Dr. Dalton again on June 4 and July 2, 2013, her condition appeared unchanged. AR 425, 429.

On May 8 and July 10, 2013, Plaintiff participated in an employment skills class run by Rio Rancho Family Health Center ("RRFHC") designed to help Plaintiff cope with her mood disorders in a work setting. AR 421, 431. On June 18, 2013 Plaintiff met with a licensed art therapist, Jill Zomerhuis, who assessed her with a GAF score of 45. AR 427. She met with the same art therapist on July 17 and 25, 2013, who noted that on July 17, Plaintiff's mood seemed to be improved and assessed her a GAF score of 53, but by July 25 it had degraded and her GAF

---

[1] The record of the 4/4/13 visit indicates that the GAF score of 47 was assessed on 2/28/13.  The record of Plaintiff's appointment with Mr. Rabka on 2/28/13 does not contain a GAF score.  AR 375-76.  When Plaintiff met with Mr. Rabka on 2/21/13, however, he assessed her with a GAF of 47.  AR 377-78.

score was 49. AR 433-37. On August 1, 2013, Ms. Zomerhuis reported she saw no change in Plaintiff's mental status and assessed her a GAF score of 50.

When Dr. Dalton saw Plaintiff on August 8, 2013, he adopted a GAF score of 50 (AR 462) that Jill E. Zomerhuis, LPAT assigned when she met with Plaintiff on August 1, 2013. AR 457-58. At this appointment, Dr. Dalton also continued to find that Plaintiff had severe problems related to, among other things, occupation, her primary support group, and her social environment. AR 462.

          ii. *Plaintiff's additional medical history before the Appeals Council*

For her appeal, Plaintiff produced the following additional records. On April 8, 2014, Mr. Rabka provided a medical assessment of Plaintiff's ability to do work related activities. He noted that Plaintiff had moderate to marked difficulties in understanding and memory, sustained concentration and persistence, social interactions, and adaptation. AR 468-469. Ms. Zomerhuis also provided a medical assessment of Plaintiff's ability to do work related activities, dated April 16, 2014, where she also found that Plaintiff had moderate to marked difficulties in understanding and memory, sustained concentration and persistence, social interactions, and adaptation. AR 469-472.

Plaintiff also produced ongoing treatment records from Ms. Zomerhuis and Dr. Michael Sievert indicating Plaintiff's ongoing mental health issues. AR 474-494.

### B. Procedural history

Plaintiff filed her Title II and Title XVI applications for disability insurance benefits and supplemental social security income on June 6, 2012. AR 26. Her claims were denied on October 10, 2012 and her request for reconsideration denied on December 20, 2012. *Id*. Plaintiff requested a hearing on January 30, 2013. *Id*. An in-person hearing was held on September 3,

2013. *Id*. The ALJ issued his decision on February 24, 2014, in which he denied Plaintiff's request for benefits. AR 26-39. The Appeals Council denied Plaintiff's appeal of the ALJ's decision on July 11, 2014. AR 1.

## II.   APPLICABLE LAW

### A.  Disability Determination Process

A Plaintiff is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Plaintiff must establish that she is not currently engaged in "substantial gainful activity." If Plaintiff is so engaged, she is not disabled and the analysis stops.

(2) Plaintiff must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Plaintiff is not so impaired, she is not disabled and the analysis stops.

(3) If Plaintiff can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Plaintiff is presumed disabled and the analysis stops.

(4) If, however, Plaintiff's impairment(s) are not equivalent to a listed impairment, Plaintiff must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Plaintiff] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the Plaintiff's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Plaintiff's past work. Third, the ALJ determines whether, given Plaintiff's RFC, Plaintiff is capable of meeting those demands. A Plaintiff who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Plaintiff is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Plaintiff is deemed disabled. If, however, the Commissioner is able to make the required showing, the Plaintiff is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence

in the record. It does require, however, that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

### III.   ANALYSIS

Plaintiff asserts that the ALJ erred in failing to perform a treating physician analysis on Dr. Dalton's findings. *Doc. 18* at 21-22. Further, she argues that, to the extent the ALJ did an analysis of Dr. Dalton's records, he improperly interpreted or minimized Dr. Dalton's findings. *Id*. at 22. Plaintiff contends that the ALJ erred by failing to: identify Dr. Dalton by name as a treating physician; explicitly discuss the weight he assigned to Dr. Dalton's opinion; and state Dr. Dalton's qualifications and length of treatment of Plaintiff. *Id.* at 21-22. She then attacks the ALJ's interpretation of Dr. Dalton's treatment records, stating that the ALJ improperly reached his own conclusion that, because Plaintiff only infrequently reported tangential thought processes, and continued to drive herself as necessary "she appears to have retained the ability to understand, remember, and complete simple as well as complex tasks" and wrongly disregarded Dr. Dalton's assigned GAF scores. AR 34, *doc. 18* at 22. Defendant counters that Dr. Dalton never "offered a specific opinion regarding Plaintiff's work-related abilities and limitations" beyond providing GAF scores, the ALJ properly considered those scores, and the ALJ accorded Dr. Dalton's opinion appropriately insignificant weight in light of the record as a whole. *Doc. 22* at 8-9.

This case presents a close call. On the one hand, as Plaintiff argues, despite Dr. Dalton's status as a treating psychiatrist, the ALJ engaged in very little analysis of Dr. Dalton's reports and opinions. He does not identify Dr. Dalton by name, does not recognize him as a treating source, does not go through specific findings in his reports, does not indicate the weight assigned

to his opinions, and, to the extent those opinions conflict with the ALJ's ultimate conclusion, the ALJ does not explain why Dr. Daltons' opinions are not controlling.  On the other hand, as Defendant argues, Dr. Dalton does not provide much to analyze.  His reports contain very little narrative and the little narrative that exists does not directly bear on Plaintiff's work related abilities.  Nothing in the narrative portions of Dr. Dalton's reports appears to contradict the ALJ's ultimate conclusion (although non-narrative portions do), and the ALJ's ultimate conclusion is supported by examining and consulting medical doctors.  Thus, a question exists as to whether Plaintiff has met her burden of proof through step four of the sequential analysis.

Although a close call, the Court concludes that the ALJ erred in not sufficiently analyzing Dr. Dalton's reports as a treating physician.  At the outset, the Court notes that, although Dr. Dalton saw Plaintiff on more than ten occasions (AR 327, 357, 360, 388, 405, 408, 415, 418, 423, 428, 461) the ALJ never references Dr. Dalton by name.  While the ALJ's failure to mention Dr. Dalton by name does not in itself constitute a reason to remand this case, failing to mention by name the psychiatrist who treated Plaintiff on more than ten occasions provides an inauspicious beginning to what should be a thorough and deferential review of a treating psychiatrist's records.  Ultimately, the ALJ's failure to acknowledge Dr. Dalton as a treating psychiatrist, to adequately discuss his opinions, to state the weight given to those opinions, and to justify giving those opinions less than controlling weight, constitutes reversible error.  In further analyzing the ALJ's  failure to consider Dr. Dalton's opinions, the Court will divide them into two groups: those related to the GAF scores she assigned and those contained in her reports, albeit not in narrative form.

      A.      **The ALJ failed to properly consider Dr. Dalton's GAF findings**

At various times throughout his treatment of Plaintiff, Dr. Dalton adopted GAF scores assigned to Plaintiff of 45 (AR 389, 396), 47 (AR 415-17), and 50 (AR 462).  A GAF score of 50 or below represents, "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Keyes-Zachary*, 695 F.3d at 1162 n. 1 (citing American Psychiatric Disorders 32, 34 (Text Revision 4th ed. 2000)).  In an unpublished opinion, the Tenth Circuit stated that, "[s]tanding alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work . . ." but "[a] GAF score of fifty or less, however, does suggest an inability to keep a job." *Lee v. Barnhart*, 117 Fed.Apx. 674, 678 (10th Cir. 2004) (unpublished).  Just how much weight an ALJ should give to GAF scores has been subject to significant debate.  *See Drummond v. Astrue*, 895 F.Supp.2d 1117, 1129-32 (analyzing cases in light of a claimant's argument that the ALJ committed error by failing to consider GAF scores and Commissioner's argument that an ALJ is not required to discuss or rely on GAF scores); *see also Rivera v. Astrue*, 9 F.Supp.3d 495, 501-07 (E.D. Penn. 2014) (concluding that ALJ's failure to discuss GAF scores requires remand).  In *Keyes-Zachary v. Astrue*, by expressing "concern" with GAF scores of 46 and 50, the Tenth Circuit indicated that GAF scores should be considered.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012).  In sum, a review of cases on the subject indicates that an ALJ must at least review GAF scores.  If those scores come from a treating source they carry more weight. *See Keyes-Zachary*, 695 F.3d at 1164 (GAF scored prepared by acceptable medical source trumps score prepared by a counselor).  But if those scores are unsupported by notes or a narrative, their weight is significantly reduced. *Drummond*, 895 F.Supp.2d at 1132.

In the present case, Dr. Dalton's status as a treating physician increases the significance of his GAF scores. However, the absence of a notes or a narrative supporting these scores, combined with the fact that he appears to have adopted those scores from therapists who met with Plaintiff, reduces the significance of these scores. Rather than distinguishing between GAF scores contained in Dr. Dalton's records and those contained in the records of others at RRFHC, the ALJ appears to have grouped all of the GAF scores together. He then gave "limited weight" to GAF scores "in the more recent treatment notes" (presumably meaning notes from the RRFHC). AR 36. In so doing, he noted that "it appears deference was given to the therapists' to assess any changes in the claimant's functioning." AR 36. Although the ALJ wrote in the passive voice and failed to indicate whether these treatment notes come from Dr. Dalton, others who treated Plaintiff at RRFHC, or from other facility, it appears the ALJ was referring to all GAF scores coming out of RRFHC, regardless of who provided those scores. However, this lack of specificity is in itself is problematic. *Wamsley v. Astrue*, 780 F.Supp.2d 1180, 1189 (D. Colo. 2011) ("The ALJ's decision must be specific enough to make clear to subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.") (citing, *inter alia*, *Watkins v. Barnhart,* 350 F.3d 1297, 1300-01 (10th Cir. 2003)).

Further, Defendant's explanation for the ALJ's failure to reference Dr. Dalton by name clashes with Defendant's argument (and the decision of the ALJ) that the opinions of therapists and counselors who treated Plaintiff should be afforded little weight.[2] Defendant asserts that the ALJ did not refer to Dr. Dalton by name because he was only one of five providers at the RRFHC who saw Plaintiff. *Doc*. 22 at 9 n. 4. But Dr. Dalton appears to be the only *doctor*

---

[2] Defendant argues that the opinions two of these providers – Mr. Rabka and Ms. Zomerhuis – submitted to the Appeals Council should be discounted because they are not doctors. *Doc. 22* at 12-13.

Plaintiff saw at RRFHC.³ By asserting that because they all played part in Plaintiff's treatment, the ALJ properly referred to those who treated Plaintiff at RRFHC as a group rather than individually, Defendant is essentially putting these other providers on par with Dr. Dalton. Defendant cannot successfully assert in one breath that not mentioning Dr. Dalton by name can be excused because the ALJ recognized the entire group of providers at RRFHC as valuable but then, in the next breath, assert that the opinions of providers other than Dr. Dalton are not valuable. Ultimately, the Court agrees that the lack of narrative to support Dr. Dalton's GAF scores and his reliance on non-medical sources in arriving at these scores reduces the significance of these GAF scores, but it does not justify disregarding them.

The ALJ also justified giving little weight to GAF scores on the basis that "these examiners likely focused on subjective statements" and "the objective findings do not support the presence of 'serious' symptoms over the period at issue." AR 36. But, as the ALJ noted, GAF scores, by their very nature are largely subjective. AR 33 at n.1 ("GAF score is a subjective determination . . .."); *see also Drummond*, 895 F.Supp.2d at 1123 n. 1 (a GAF score is a subjective determination). That the GAF scores in this case are largely based on subjective statements puts them in the same category as GAF scores in all other cases, including those the Tenth Circuit and other federal courts have found to be relevant. Thus, the ALJ cannot severely discount GAF scores because they were largely based on "subjective statements" rather than objective findings – as he himself noted, GAF scores are inherently subjective determinations.

---

³ Defendant did not indicate any other doctor Plaintiff saw at the RRFHC and the Court's review of the record has revealed none. In addition to Dr. Dalton, the Court's review of the record has revealed at least six other individuals at the RRFHC who saw Plaintiff. Plaintiff also saw Mary Colemen, PSRC on at least three different occasions (AR 422, 431, 437), Elizabeth Sanchez, CSW on at least two different occasions (AR 443, 460), Carla E. Surgeon, CNP on at least two occasions (AR 41, 414), William Morefield, CPSS on at least three different occasions (AR 453, 455, 464), Mr. Rabka on at least eight different occasions (AR 376, 378, 380, 384, 386, 391, 393, 400) and Ms. Zomerhuis on at least four different occasions (AR 426, 433, 435, 453).

In *Keyes-Zachery*, the Tenth Circuit expressed "concern" over a therapist's GAF scores of 46 and 50. *Id*. at 1164. Ultimately, the Tenth Circuit's concern was alleviated by the contradictory presence of a consulting psychiatrist's GAF score of 65. *Id*. That same situation is not present here. The consulting doctor in this case also assessed Plaintiff with a low GAF score – in a range between 50 and 55. AR 36. Moreover, as a treating psychiatrist, Dr. Dalton's opinion was entitled to greater weight than the opinion of the therapist in *Keyes-Zachery* or of Dr. Brimberg – an examining doctor. *Doyal v. Barnhart*, 331 F.3d 758, 763 (10th Cir. 2003) ("Absent an indication that an examining physician presented the *only* medical evidence submitted pertaining to the relevant time period, the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion.") (internal quotation omitted) (emphasis in original). Although the ALJ states that he gave limited weight to the GAF scores, his decision indicates that he disregarded them altogether. Nowhere in his decision does he explain the significance of a GAF rating of 50 or lower and nowhere in his decision does he discuss how this rating bears on Plaintiff's ability to work. The ALJ's failure to mention Dr. Dalton by name, acknowledge him as a treating psychiatrist, accord him the deference he is entitled, adequately explain why he did not receive the deference to which he is entitled, or state what weight was ultimately given to his opinion, constitutes error.

**B.     The ALJ failed to properly consider Dr. Dalton's other findings**

Not only did the ALJ fail to properly analyze Dr. Dalton's opinion with regard to the GAF scores, he failed to give credence to, or otherwise assess, his determination that Plaintiff had severe problems related to her occupation and social environment and was in need of medication. AR 415-16, 428-29, 461-62. Nor did he address Dr. Dalton's repeated finding of

depression, his reports in January 2013 referring to suicide ideation (AR 405), or his February 2013 report finding chronic problems with PTSD, severe major depressive disorder and psychosis (AR 388).[4] The ALJ never specifically analyzed Dr. Dalton's conclusions. This is not to say that the ALJ did not appear to consider Dr. Dalton's treatment records – as Defendant correctly points out, he refers to Dr. Dalton's notes about Plaintiff's compliance with her medication, the tenor of her interactions with her "providers" and noting that there was "limited objective evidence" about Plaintiff's psychiatric issues in the records. AR 35-36, *doc. 22* at 9. These references, however, are insufficiently specific for the Court to discern how the ALJ analyzed and accorded weight to Dr. Dalton's opinions. *See Lopez v. Astrue*, 371 F. App'x 887, 891-92 (10th Cir. March 29, 2010) (explaining that the ALJ is "required to articulate what weight, if any, she assigned to [the treating physician's] opinion.")

When an opinion of a treating physician is present in the record, an ALJ must "give good reasons in [the] notice of determination or decision for the weight assigned to a treating physician's opinion." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2); *see also* Social Security Ruling 96–2p, 1996 WL 374188, at *5; *Doyal* 331 F.3d at 762. The ALJ's decision must also "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5.

In analyzing a treating physician's opinion, the ALJ must conduct a sequential analysis in order to determine whether or not the treating physician's opinion is entitled to controlling weight, starting with whether the opinion at issue is "well-supported by medically acceptable

---

[4] The Court notes that, although Dr. Dalton's February 5, 2013 report lists psychosis as a chronic problem, the same report notes that Plaintiff is not exhibiting any signs of psychosis. AR 388. Thus, the ALJ might have justifiably discounted the listing of psychosis in this report. The problem, however, is that the ALJ did not specifically analyze the report or these findings at all.

13

clinical and laboratory diagnostic techniques." SSR 96–2p, 1996 WL 374188, at *2 (quotations omitted). If the ALJ finds that the opinion is not, she may end the inquiry there. *Watkins*, 350 F.3d at 1300. But if the opinion is properly supported, the ALJ must then determine whether it is also consistent with the medical record as a whole. SSR 96–2p, 1996 WL 374188, at *2. If it is inconsistent, it is not entitled to controlling weight. *Id.* Even if the ALJ finds that the opinion is not entitled to controlling weight, the ALJ must still weigh the evidence to determine how much deference it should be accorded, considering:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

SSR 96–2p, 1996 WL 374188, at *4; *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (quotation omitted). After conducting this analysis, the ALJ must provide good reasons for the weight ultimately assigned to the opinion. 20 C.F.R. § 404.1527(d)(2). The ALJ in this case simply did not engage in the required analysis of a treating physician. For instance, he did not discuss the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, or whether Dr. Dalton is a specialist in the area upon which his opinions are rendered. The ALJ did not assign a weight to Dr. Dalton's opinions or provide good reasons to discount those opinions. In failing to do so, he committed reversible error.

Defendant seeks to mitigate this failure by arguing that "no treating physician offered a specific opinion regarding Plaintiff's work-related abilities and limitations." *Doc. 22* at 9. As an initial matter, this is not entirely correct – Dr. Dalton's reports indicate that Plaintiff had severe problems related to occupation. AR 416, 462 389. The ALJ did not address this assessment at

14

all.  But even had Dr. Dalton not offered a specific opinion about Plaintiff's work-related abilities and limitations, his medical opinions would still be relevant.  Defendant cites no authority, and the Court is aware of none, to support an argument that the medical opinions and diagnosis of a treating physician only matter if they specifically address work related abilities and limitations.

The Court acknowledges that, had the ALJ properly analyzed Dr. Dalton's opinions, he might have justifiably ended up reaching the same conclusion.  Regardless of what outcome the ALJ would have reached if he had sufficiently considered Dr. Dalton's opinions, however, not sufficiently considering them constitutes error. Further, Defendant does not argue that this error was harmless.  As a result, the Court will not engage in a harmless error analysis.  *See Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) ("[t]he agency does not contend that the ALJ's error is harmless, and we will not fashion a party's arguments.").

The Court finds that the ALJ committed reversible error in not adequately considering Dr. Dalton's reports.  Therefore, the Court will remand the matter for further consideration.  Because the Court remands on this basis, it will not consider Plaintiff's remaining arguments.

## IV. CONCLUSION

Plaintiff has demonstrated that the ALJ improperly failed to consider and explain the weight assigned to Plaintiff's treating physician's opinion.  The Court therefore reverses the Commissioner's decision denying Plaintiff benefits and remands this action to the Commissioner to conduct further proceedings consistent with this opinion.  On remand, the ALJ shall ensure that all medical evidence in the record is considered.

      /s/ Steven C. Yarbrough
      STEVEN C. YARBROUGH

                    UNITED STATES MAGISTRATE JUDGE
                    **Presiding by Consent**